**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **MICHAEL G. STAG, L.L.C.,** | * | **CIVIL ACTION NO.  18-3425** |
| **SMITH STAG, L.L.C.,** | * | |
| **and MICHAEL G. STAG** | * | **SECTION: A (2)** |
| | * | |
| **VERSUS** | * | **JUDGE: ZAINEY** |
| | * | |
| **STUART H. SMITH, L.L.C.** | * | **MAGISTRATE:   WILKINSON** |
| **and STUART H. SMITH** | * | |
| | * | |

**\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \***

<u>**FIRST AMENDED AND RESTATED COMPLAINT**</u>

**NOW INTO COURT**, through undersigned counsel, come Complainants, Michael G. Stag, L.L.C. ("Stag, L.L.C."), Stag Liuzza, L.L.C. (formerly known, and referred to hereinafter, as "Smith Stag, L.L.C."), and Michael G. Stag ("Stag") (collectively the "Stag Parties" or "Complainants"), who, pursuant to Rule 15(a)(1) of the Federal Rules of Civil Procedure, submit their First Amended and Restated Complaint in this matter, as follows:

<u>**PARTIES**</u>

1.     Complainants Stag, L.L.C. and Smith Stag, L.L.C. are both limited liability companies organized under the laws of Louisiana, each with its principal place of business in Orleans Parish.  The sole member and manager of both Stag, L.L.C. and Smith Stag, L.L.C. is complainant Stag who resides and is domiciled in Orleans Parish.  Because a limited liability company is a citizen of every state in which a member is a citizen, Stag, L.L.C. and Smith Stag, L.L.C. are both citizens of Louisiana.

2.     Defendants herein are Stuart H. Smith, L.L.C. ("Smith, L.L.C.") and Stuart H. Smith ("Smith") (collectively the "Smith Parties" or "Defendants").  Smith, L.L.C. is a limited liability company organized under the laws of Louisiana with its principal place of business in Orleans Parish.  The sole member of Smith, L.L.C. is Smith.  Upon information and belief,

Smith maintains his domicile in Florida and is accordingly a Florida citizen.  Because a limited liability company is a citizen of every state in which a member is a citizen, Smith, L.L.C. is a citizen of Florida.

## JURISDICTION AND VENUE

3.    Jurisdiction is vested with this Honorable Court, pursuant to 28 U.S.C. § 1332, because complete diversity exists between the parties, as the Stag Parties are Louisiana citizens, and the Smith Parties are Florida citizens, and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

4.    This Court has personal jurisdiction over the Smith Parties, because the Smith Parties have sufficient minimum contracts with the State of Louisiana, and the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.

5.    Venue is proper in this judicial district, as the parties conduct business within the jurisdiction of this Honorable Court.

6.    This Court has the authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.

## FACTUAL BACKGROUND

**A.    Introduction**

7.    Smith Stag, L.L.C. is a plaintiff-oriented law firm founded in 2002 by Smith, L.L.C. and Stag.  For more than 15 years, Smith Stag, L.L.C. has represented a variety of clients in litigation involving environmental pollution, mineral royalty disputes, toxic and radioactive materials exposure, defective drugs and medical devices, personal injury, accident, and wrongful death.

2

8.      This suit is a civil action for declaratory relief and money damages arising out of the impossibility of one of the objects and causes of an Agreement by and between Smith, L.L.C. and Stag, L.L.C., to which Smith and Stag intervened and agreed to likewise be bound, entered into on the 8th day of June, 2015 (hereinafter the "2015 Agreement").  A copy of the relevant excerpts of the 2015 Agreement is filed in the record at Docs. 1-1, 1-2, and 1-3.

9.      The 2015 Agreement was entered into after Smith, L.L.C. withdrew as a member of Smith Stag, L.L.C., liquidating Smith, L.L.C.'s two-thirds (2/3) interest in Smith Stag, L.L.C. Smith, L.L.C. withdrew as a member of Smith Stag, L.L.C. purportedly due to a grave illness which caused Smith to retire from the legal profession.

10.     At the time the 2015 Agreement was effective, made, and entered into, based upon the representations made by Smith and relied upon by the Stag Parties, none of the parties to the 2015 Agreement believed Smith would recover sufficiently to ever return to the practice of law.  Smith represented that he was disabled and unable to continue with the practice of law. Further, because he would not return to the practice of law, the Stag Parties could continue the law firm with the name Smith Stag. The purported disability of Smith, his representations that he was permanently disabled and therefore would be unable to return to the practice of law, and continued use of the name Smith Stag by the Stag Parties were principal causes for the execution of the 2015 Agreement, and this was understood by all parties to the Agreement.

11.     However, since that time, Smith has apparently made a fortuitous medical recovery.

12.     In a letter dated March 27, 2018, Smith announced that because of his fortuitous recovery, he intended, subject to his physician's advice, to return to practicing law.

3

13. Although the Stag Parties are pleased to learn of Smith's fortuitous recovery, Smith's return to the practice of law, as explained in greater detail herein, rendered performance of material provisions of the 2015 Agreement impossible.

14. Smith's stated intent to return to practicing law, subject to his physician's advice, further demonstrates that there is an actual case or controversy between the Stag Parties and the Smith Parties. Further, after the filing of the initial Complaint in this action, Counsel for the Smith Parties notified the Stag Parties that Smith had returned to the practice of law. As a result of Smith's return to the practice of law, the Stag Parties were no longer able to practice law and have already incurred expenses and damages related to the inability to continue the use of the name Smith Stag.

15. In the alternative, if contrary to Smith's representations about his health and disability, the possibility for his recovery and return to the practice of law was foreseeable by Smith at the time the 2015 Agreement was effective, made, and entered into, this intention was not disclosed to the Stag Parties, and the Stag Parties would not have obligated themselves to the 2015 Agreement, as written.

16. Smith knowingly agreed to allow the Stag Parties to continue to use the name "Smith Stag, LLC," and Smith knew that this was a principal cause for the Stag Parties to enter into the agreement.

**B.     The 2015 Agreement Required Bilateral Performance.**

17. Effective March 1, 2015, Smith, L.L.C. withdrew as a member of Smith Stag, L.L.C., as permitted under Section 5.3 of the Operating Agreement of Smith Stag, L.L.C., as a Preferred Withdrawal due to Smith's disability.

18. Under the terms of the Operating Agreement, upon the Preferred Withdrawal of a member, that member "shall be entitled to receive, in liquidation of the Member's Interest []

FIFTY PERCENT (50%) of the withdrawing member's interest in the attorney fees of all contingency fee cases under contract in [Smith Stag, L.L.C.] and full reimbursement of all costs paid by the withdrawing member in those cases to be paid at the end of the litigation, or otherwise when monies are received by any settlement or judgment." *See* Operating Agreement of Smith Stag, L.L.C. at 14 (Doc. 1-1 at 29).

19.    Preferred Withdrawal status, based on Smith's representations about his health, disability, and inability to return to the practice of law, further allowed the Smith Parties to avoid contributing to the Company's ongoing financial obligations, whereas Non-Preferred Withdrawal required continued funding of the Company's ongoing financial obligations for nine (9) months.

20.    Because Smith, L.L.C. had a two-thirds (2/3) membership interest in Smith Stag, L.L.C., and net losses and net profits from operation of Smith Stag, L.L.C. were to be borne by the members proportionately to their membership interests, the liquidated value upon Smith, L.L.C.'s withdrawal from Smith Stag, L.L.C. would have been one-third (1/3), or fifty percent (50%) of two-thirds (2/3), of the attorney fees of all contingency fee cases under contract in Smith Stag, L.L.C., and full reimbursement of all costs paid by the withdrawing member in those cases to be paid at the end of the litigation, or otherwise when monies are received by any settlement or judgment.

21.    Following the liquidation of Smith, L.L.C.'s membership interest in Smith Stag, L.L.C., the remaining two-thirds (2/3) of the contingency fee cases under contract in Smith Stag, L.L.C. would be allocated to Stag, the sole, remaining member of Smith Stag, L.L.C.

22.    However, given Smith's retirement and the value provided to Smith Stag, L.L.C. by guaranteeing the continuing use of Smith's name, the Smith Parties and Stag Parties negotiated the 2015 Agreement, deviating from the provisions of the Operating Agreement of

5

Smith Stag, L.L.C. governing the Preferred Withdrawal of a member, *inter alia* increasing Smith, L.L.C.'s share of the contingency fee cases Smith Stag, L.L.C. had under contract from one-third (1/3) up to one-half (1/2) on a set schedule of cases.

23.    Because the Louisiana Rules of Professional Conduct permit a law firm, such as Smith Stag, L.L.C., to continue to include in its name the name of a retired member of the law firm, the Smith Parties and the Stag Parties provided that Smith Stag, L.L.C. may continue to use the name "Smith" in the name of Smith Stag, L.L.C.  (Doc. 1-1 at 8). All parties to the 2015 Agreement were lawyers and understood this requirement for the continued use of the name by the Stag Parties.

24.    This continued use of the name Smith Stag, L.L.C. provided Smith Stag, L.L.C. with certain intangible value from the name recognition and reputation in the community built through years of zealous advocacy on behalf of its clients in litigation involving environmental pollution, mineral royalty disputes, toxic and radioactive materials exposure, defective drugs and medical devices, personal injury, accident, and wrongful death in Louisiana state and federal courts.  Smith Stag, L.L.C. has spent considerable time and money promoting this brand, both before and after the 2015 Agreement, to further increase this intangible value.

25.    As part of the agreement to permit the continued use of the name "Smith" in the name of Smith Stag, L.L.C., the Stag Parties agreed to increase the percentage of fees that would be due to Smith, L.L.C. if Smith Stag, L.L.C.'s contingency fee were ever collected for several cases from the one-third (1/3) provided for under the terms of the Operating Agreement of Smith Stag, L.L.C. up to one-half (1/2).  *See* Doc. 1-1 at 3 – 6. The Stag Parties further agreed to the Preferred Withdrawal based on the agreement regarding the continued use of the name Smith Stag and the Smith Parties' agreement to fulfill their obligations related to the name.

26.    From June 8, 2015 through the present, Smith Stag, L.L.C. has received monies from settlements or judgments in cases reflected in the schedules to the 2015 Agreement and has accordingly disbursed substantial fees to the Smith Parties.  However, Smith Stag, L.L.C. has yet to receive contingency fees in settlement or judgment in several of the cases reflected in these schedules but expects to collect additional monies in settlement or judgment in the future.

**C.    Smith's Fortuitous Recovery and Stated Intentions to Leave Retirement Make Continuous Performance of the Terms of the 2015 Agreement Impossible.**

27.    In a letter dated March 27, 2018, Smith has stated unequivocally that, with his health improved, he intends to leave retirement and, with his physician's advice, return to the practice of law.

28.    In this letter dated March 27, 2018, Smith also requested to copy certain materials stored electronically on Smith Stag, L.L.C.'s discovery drive, including work product, suggesting that, as a former managing partner/member, he had some proprietary interest therein. This claim is contrary to the unambiguous provisions of the Operating Agreement of Smith Stag, L.L.C. *See* Operating Agreement of Smith Stag, L.L.C. Doc. 1-1 at 32.  ("**Section 7.12 _Title to Company Property_**.  Legal title to all property of the Company will be held and conveyed in the name of the Company.") (emphasis in original).

29.    Smith's imminent return to the practice of law makes it impossible for Smith Stag, L.L.C. to continue to use the name "Smith" in the firm name, despite the Smith Parties' and the Stag Parties' agreement to permit Smith Stag, L.L.C. to continue to do so.  As a result of this impossibility, Smith Stag, L.L.C. has changed its name to Stag Liuzza, L.L.C.

30.    Article 1877 of the Louisiana Civil Code provides: "When a fortuitous event that has made a party's performance impossible in part, the court may reduce the other party's counter performance proportionally[.]"

31. Here, Smith's fortuitous recovery and present return to the practice of law has made performance of the Smith Parties' obligation to permit Smith Stag, L.L.C. to continue to use the name "Smith" in the name of the firm impossible.

32. Therefore, the Stag Parties are entitled to have their counter performance, namely the percentage of fees due to Smith, L.L.C., reduced accordingly.

33. In the alternative, the Stag Parties are entitled to dissolution of the 2015 Agreement and damages to compensate the Stag Parties for monies previously paid by the Stag Parties to Smith, labor and expenses incurred marketing the law firm with the continued use of the name "Smith," subsequent to the 2015 Agreement, labor and expenses requires to change the name of the law firm, and labor and expense to create a new logo, website, and social media pages for the law firm.

34. In the alternative, Smith returning to the practice of law breached the 2015 Agreement.

35. In the event that Smith foresaw his return to the practice of law at the time of the 2015 Agreement and represented the contrary to the Stag Parties, the Stag Parties are entitled to rescission of the 2015 Agreement, as well as damages and attorney fees.

36. Additionally, the Stag Parties are entitled to a declaratory judgment that Smith Stag, L.L.C., whose sole member and sole manager is Stag, is the sole owner of its property, including, *inter alia*, the discovery drive and its electronically stored contents, such as work product.

### FIRST COUNT: FOR DECLARATORY RELIEF

37. The Stag Parties repeat the allegations stated in the above paragraphs as if fully set forth herein.

38.     An actual and justiciable controversy exists between the Stag Parties and the Smith Parties regarding the terms and conditions of the 2015 Agreement, as well as any modification required by law due to the impossibility of certain provisions thereof.  This controversy is ripe and of sufficient immediacy to justify the issuance of a declaratory judgment.

**WHEREFORE**, the Stag Parties pray for this Honorable Court to declare the rights and obligations of the Parties, including but not limited to a declaration that the Stag Parties are entitled to reduce the percentage of fees that would have been or would be otherwise due the Smith Parties under the 2015 Agreement because of the impossibility of continued performance and/or error and/or breach of one or more provisions thereunder.

### SECOND COUNT: FOR DECLARATORY RELIEF

39.     The Stag Parties repeat the allegations stated in the above paragraphs as if fully set forth herein.

40.     An actual and justiciable controversy exists between the Stag Parties and the Smith Parties regarding title to property of Smith Stag, L.L.C., including, *inter alia*, the discovery drive and its electronically stored contents, such as work product.  This controversy is ripe and of sufficient immediacy to justify the issuance of a declaratory judgment.

**WHEREFORE**, the Stag Parties pray for this Honorable Court to declare the rights and obligations of the Parties, including but not limited to a declaration that Smith Stag, L.L.C., whose sole manager and sole member is Stag, is and has at all relevant times hereto been the owner of certain property including the discovery drive and its electronically stored contents.

### THIRD COUNT:  IN THE ALTERNATIVE, FOR DECLARATORY RELIEF
### AND DISSOLUTION OF THE 2015 AGREEMENT

41.     The Stag Parties repeat the allegations stated in the above paragraphs as if fully set forth herein.

42.     An actual and justiciable controversy exists between the Stag Parties and the Smith Parties regarding the terms and conditions of the 2015 Agreement, as well as dissolution thereof due to the impossibility of certain provisions thereof if modification by this Court is not possible or practicable.

43.     In the alternative to reducing the Stag Parties counter performance as prayed for in Count One, in the event this Court declares the 2015 Agreement dissolved because of the impossibility of certain provisions thereof, such dissolution only dissolves the 2015 Agreement and does not affect or alter in any way the withdrawal by Smith, L.L.C., effective March 1, 2015, such that Stag remains the sole member and sole manager of Smith Stag, L.L.C. following the dissolution of the 2015 Agreement.  This controversy is ripe and of sufficient immediacy to justify the issuance of a declaratory judgment.

**WHEREFORE,** the Stag Parties pray for this Honorable Court to declare the rights and obligations of the Parties, including but not limited to a declaration that the 2015 Agreement is dissolved and Stag remains the sole member and sole manager of Smith Stag, L.L.C. because of the impossibility of continued performance of one or more provisions thereunder.

### FOURTH COUNT: IN THE ALTERNATIVE, FOR DISSOLUTION/RESCISSION OF THE 2015 AGREEMENT AND DAMAGES

44.     The Stag Parties repeat the allegations stated in the above paragraphs as if fully set forth herein.

45.     In the alternative to the remedies sought in Count One and Count Three, because a fortuitous event has made the Smith Parties' performance impossible in part, and/or because of lack of consent due to error, the 2015 Agreement should be declared dissolved, and damages should be awarded to compensate the Stag Parties.

46.     These damages include, *inter alia*:

10

a.   return of monies previous paid by the Stag Parties to the Smith Parties, in an amount to be determined;

b.   labor and expense marketing the law firm with the continued use of the name "Smith," including revamping the firm's logo and website following the 2015 Agreement;

c.   labor and expense required to change the name of the law firm on letterhead, envelopes, business cards, bank accounts, other financial accounts, etc.; and

d.   labor and expense to create a new logo, website, and social media pages for the law firm.

44.   In the event that the Smith foresaw his potential for improvement in his health and his potential for return to the practice of law at the time of the 2015 Agreement and represented the contrary to the Stag Parties, the Stag Parties are entitled to rescission of the 2015 Agreement, that the Smith Parties' withdrawal be declared Non-Preferred pursuant to the Operating Agreement of Smith Stag, LLC, as well as damages and attorney fees.

**WHEREFORE**, the Stag Parties pray for this Honorable Court to declare the 2015 Agreement dissolved and award damages in favor of the Stag Parties in an amount to be determined at trial.

<u>**PRAYER FOR RELIEF**</u>

The Stag Parties pray that this Honorable Court enter judgment awarding them the following relief:

a.   a Declaratory Judgment finding that the Stag Parties are entitled to reduce the percentage of monies payable to Smith, L.L.C. under the 2015 Agreement due to the impossibility created by Smith's fortuitous recovery and return to the practice of law;

b.   a Declaratory Judgment finding that Smith Stag, L.L.C. is the sole owner of its property, including, *inter alia*, electronically stored information such as the discovery drive;

c.   in the alternative to paragraph a immediately above, a Declaratory Judgment finding the 2015 Agreement dissolved and this dissolution in no way affected the March 1, 2015 withdrawal of Smith, L.L.C. as a member of Smith Stag, L.L.C. and/or the Smith Parties' withdrawal was Non-Preferred;

d.      in the alternative to paragraphs a and c immediately above, a Judgment dissolving the 2015 Agreement and awarding damages in favor of the Stag Parties and against the Smith Parties in an amount to be determined at trial;

e.      a Judgment against the Smith Parties awarding the Stag Parties attorney's fees and costs; and

f.      any and all other relief that this Court may deem just and proper, whether such relief sounds in law or equity.

Respectfully Submitted,

*/s/ Randall A. Smith*
**RANDALL A. SMITH. T.A. (No. 2117)**
**STEPHEN M. GELÉ (No. 22385)**
**DYLAN T. LEACH (No. 35897)**
        OF
**SMITH & FAWER LLC**
201 St. Charles Ave., Suite 3702
New Orleans, LA 70170
Telephone: (504) 525-2200
Telecopy: (504) 525-2205
rasmith@smithfawer.com
sgele@smithfawer.com
dleach@smithfawer.com

***Counsel for Complainants, Michael G. Stag, L.L.C.,
Smith Stag, L.L.C., and Michael G. Stag***

## CERTIFICATE OF SERVICE

I hereby certify that on 28th day of June, 2018 I caused to be served via the Court's CM/ECF system the foregoing on all counsel of record.

*/s/ Randall A. Smith*

12