UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| MICHAEL G. STAG, LLC ET AL. | CIVIL ACTION |
|---|---|
| VERSUS | NO. 18-3425 |
| STUART H. SMITH, LLC ET AL. | SECTION "D" (2) |

**ORDER AND REASONS ON MOTION**

This case is an unseemly dispute between lawyers over the substantial spoils of their former law practice, Smith Stag LLC. It centers around a June 8, 2015 contract between former law partners. ("the Separation Agreement"). Each side has asserted claims and counterclaims against the other. Plaintiffs\counterclaim defendants are Michael G. Stag ("Stag"), Michael G. Stag, LLC; Smith Stag LLC, and Stag Liuzza, LLC (collectively "the Stags"). Defendants/counter-claimants are Stuart H. Smith ("Smith") and Stuart H. Smith, LLC (collectively "the Smiths").

In addition to breach of the 2015 Agreement, the parties have asserted broad-sweeping and serious allegations of misconduct against each other. Throughout their amended complaint, Record Doc. No. 116, the Stags allege that in 2014, Smith "represented that he was gravely ill, [and] unable to continue the practice of law" as a means of obtaining a financially beneficial "Preferred Withdrawal" from the parties' former law firm, as opposed to a less financially favorable "Nonpreferred Withdrawal." Id. at ¶ 10, p. 3. The Stags allege, however, that Smith "was not in fact disabled." Id. at ¶ 11, p. 4. They refer to Smith's condition as a "purported disability," id. at ¶ 14, p. 4, and assert that Smith was "motivated" to assert the "purported disability" because the Smiths "benefitted by avoiding approximately

one million dollars ($1,000,000.00) in payments for Smith Stag, L.L.C.'s obligations" and "the uncertainty of a pending attorney disciplinary action against Smith related to his conviction for violation of Louisiana's cyberstalking law, which had the potential to cause a Nonpreferred Withdrawal . . . if Smith were disciplined to the extent of being suspended from the practice of law. . . ." Id. at ¶¶ 12, 13, p. 4. The Stags consistently refer to Smith's "fortuitous medical recovery" and insinuate misrepresentation by Smith in various alternative allegations, including that "if contrary to Smith's representations about his health and disability, the possibility for his recovery and return to the practice of law was foreseeable, . . . this intention was not disclosed," id. at ¶ 19, p. 5; that Smith's characterizations of the effect of his health and medical conditions on his ability to practice law "were a misrepresentation or suppression of the truth," id. at ¶ 20, pp. 5–6; and that "Smith foresaw his return to the practice of law at the time of the 2015 Agreement and represented the contrary to the Stag[s], . . ." Id. at ¶ 40, p. 10.

In their counterclaim, the Smiths disclose a letter from Smith's physician describing his condition as "metastatic kidney cancer in his kidneys, lungs, left shoulder bone, and lower spine" and "chemically induced Addison disease, which is the cause of his Adrenal insufficiency." Record Doc. No. 122 at ¶ 108, p. 12. The Smiths characterize the Stags' complaint as a "frivolous[1] suit." Id. They assert that the Stags' principal allegations are false: "Contrary to the allegations made against Smith, his medical condition was grave and precarious at the time period in question; in some manner, it still remains that way. . . ." Id.

---

[1]The consequences of such an allegation, if established, are serious. Fed. R. Civ. P. 11; La. Rule Prof. Conduct 3.1.

at ¶ 118, p. 15. In broad terms, the Smiths allege that "Stag . . . continues to commingle Smith's and other funds with his own" that "Stag intentionally and without authority, and really contrary to the rules of Professional Conduct, paid himself attorney fees following settlement but declined to pay Smith;" "the Stag parties are liable for putting Smith's funds in their operating account as a breach of their professional responsibilities and embezzlement per se;" "Stag Liuzza [engaged] in their cover-up of their mishandling of the lawyer's trust account," resulting in "commingling of third-party funds with the funds of Stag Liuzza, LLC's operating account funds;" and that "[t]he Stag Parties who are escrow agents of all settlement funds through their trust account related to the Separation Agreement" breached their fiduciary duty to the Smiths. Id. at ¶¶ 136, p. 19; 139 at p. 20; 143 at p. 20; 150–51, 201 at pp. 22–23, 31; 183–84 at p. 27.

The Smiths served two virtually identical subpoenas duces tecum on Hancock Whitney Bank ("Whitney"), one through its registered agent for service of process, Record Doc. No. 140-3, and the other upon Senior Vice President John Morton, Record Doc. No. 140-4. Each subpoena attaches Exhibit A requiring production of the same materials encompassing a broad range of all four of the Stags' financial records, both personal and law firm-related, from March 1, 2015, the effective date of the Separation Agreement, to the present.

The Stags filed a motion to quash the Whitney subpoenas, Record Doc. No. 140, which is pending before me. The Smiths filed a timely opposition memorandum. Record Doc. No. 142. The Stags were granted leave to file a reply. Record Doc. Nos. 145-47. The

Smiths were granted leave to file a sur-reply, Record Doc. Nos. 150, 152, 154, over the Stags's objection. Record Doc. No. 153. For the following reasons, the motion is GRANTED IN PART AND DENIED IN PART in that one of the subpoenas is quashed and the other is modified.

Subpoenas duces tecum "'are discovery devices which, although governed in the first instance by Rule 45, are also subject to the parameters established by Rule 26.'" Garvin v. S. States Ins. Exchg. Co., 2007 WL 2463282, at *5 n.3 (N.D. W. Va. Aug. 28, 2007) (quoting In re Application of Time, Inc., 1999 WL 804090, at *7 (E.D. La. Oct. 6, 1999), aff'd, 209 F.3d 719, 2000 WL 283199 (5th Cir. 2000)); see Nicholas v. Wyndham Int'l, Inc., 2003 WL 23198847, at *1–2 (D.V.I. Oct. 1, 2003) (the "clear majority position [is] that use of Rule 45 subpoenas constitutes discovery"); Mortg. Info. Servs. v. Kitchens, 210 F.R.D. 562, 566–67 (W.D.N.C. 2002) ("a Rule 45 subpoena does in fact constitute discovery"). The court has authority, even acting on its own, either to quash or to modify a subpoena that exceeds the strictures of either Rule. Fed. R. Civ. P. 26(b)(2)(c) and (c)(1)(A) and (D) and 45(d)(3).

As an initial matter, I address some oddities and clearly erroneous legal arguments included in the Smiths' subpoenas and opposition memorandum. First, as noted above, the Smiths served two identical but separate subpoenas duces tecum on Whitney. They offer no explanation for this unnecessary duplication. "On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules . . . if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative. . . ." Fed. R. Civ. P.

4

26(b)(2)(C)(i). Thus, the subpoena served upon John Morton is QUASHED, leaving only its twin served upon Whitney's registered agent for service of process to address.

Second, the Smiths' arguments about the law concerning the scope of discovery and plaintiffs' standing to challenge the subpoenas are erroneous as a matter of law and/or rely upon inapplicable precedent. "The Court's first inquiry in ruling on a motion to quash a Rule 45 subpoena directed to a non-party, like the subpoenas at issue in this motion, is to determine whether the movant has standing to challenge the subpoena." Rice v. Reliastar Life Ins. Co., 2011 WL 5513181, at *1 (M.D. La. Nov. 10, 2011). "A motion to quash or modify a subpoena under Rule 45 may only be made by the party to whom the subpoena is directed, except where the party seeking to challenge the subpoena has alleged some personal privacy right or privilege in the documents sought." Id. (citing Brown v. Braddick, 595 F.2d 961, 967 (5th Cir. 1979); Jez v. Dow Chemical Co., Inc., 402 F.Supp.2d 783 (S.D. Tex. 2005)(emphasis added)).

To support their argument that the Stags lack standing to challenge the subject subpoenas on privacy/confidentiality grounds, the Smiths cite a series of precedents that are factually distinguishable from the instant lawsuit, and one case that supports the argument that plaintiffs have standing: (1) Brown, 595 F.2d at 967 (movants lacked standing to challenge Rule 45 subpoena because they failed to allege any personal right or privilege with respect to the subpoenaed materials); (2) Frazier v. RadioShack Corp., 2012 WL 832285, at *1 (M.D. La. Mar. 12, 2012) (movant lacked standing to challenge Rule 45 subpoena on the basis that it violated his wife's privacy rights); (3) Keybank Nat. Ass'n v. Perkins Rowe

5

Assocs., L.L.C., 2011 WL 90108, at *3 (M.D. La. Jan. 11, 2011) (movants lacked standing to challenge Rule 45 subpoenas seeking corporate business records on the basis of personal interest and confidentiality because materials did not contain any confidential information relating to movants but did have standing to challenge subpoenas seeking their personal banking records on privacy/confidentiality grounds); and (4) Pub. Serv. Co. of Oklahoma v. A Plus, Inc., 2011 WL 691204, at *4 (W.D. Okla. Feb. 16, 2011) (movants lacked standing to challenge Rule 45 subpoenas on the basis of privacy because movants failed to specify how subpoenaed materials affected their privacy rights). With the exception of Keybank's holding as to the subpoenaed bank records, these cases are distinguishable from this lawsuit because, unlike the movants described above, the Stags have asserted and established a privacy/confidentiality right over the subpoenaed materials, which consist entirely of the Stags's own banking records. Record Doc. Nos. 140-2 at p. 4; 147 at p. 3. The Stags clearly have standing to challenge the subject subpoena.

The Smiths' opposition memorandum is entirely erroneous in setting out the legal standard governing the scope of discovery applicable to the subpoenaed material. Citing Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 350 (1978), a forty-year-old Supreme Court decision that correctly applied the version of the Rule in effect at the time of that decision four decades ago, the Smiths rely upon an outdated and long ago abandoned version of Fed. R. Civ. P. 26(b) in arguing that permissible discovery extends to "any matter not privileged, which is relevant to the subject matter in the pending action." Record Doc. No. 142 at p. 3 (emphasis added).

Rule 26(b) has been amended multiple times during the four decades following Oppenheimer, all to shrink the scope of permissible discovery. The 2015 Amendments to Rule 26(b), which are applicable to the instant case filed three years after their enactment, were the culmination of that shrinking process that began in Rules amendments dating back more than 35 years. Gone for good was the broad-ranging old standard that the Smiths assert; i.e., that discovery extends to information "relevant to the subject matter" of a case. That standard was first eliminated from Rule 26(b)(1) by the 2000 Amendments after discussions and proposals that it be deleted dating back to 1978. Federal Civil Judicial Procedure and Rules, Official Advisory Committee Notes at p.148 (Thomson Reuters 2019 Rev. Ed.)(hereinafter "Official Rule Notes").

The Smiths further argue the long abandoned cant from former Rule 26(b) that the permissible scope of discovery encompasses "'any matter that bears on, or that reasonably could lead to other matters that could bear on, any issues that could bear on, any issues that is (sic) or may be in the case.'" Record Doc. No. 142 at p. 3 (quoting Oppenheimer, 437 U.S. at 351)(emphasis added). The 2015 Amendments eliminated from the Rule 26(b)(1) scope of permissible discovery the "reasonably could lead to" phrase that Oppenheimer referred to 40 years ago and that the Smiths now inapplicably parrot here. "The former provision for discovery of relevant but inadmissible information that appears **'reasonably calculated to lead to the discovery of admissible evidence' is also deleted.** The phrase has been used by some, **incorrectly,** to define the scope of discovery. . . . The

'reasonably calculated' phrase has continued to create problems . . . **and is removed** by these [2015] amendments." Official Rule Notes at p.155 (emphasis added).

Contrary to the Smiths' legal arguments, the current version of Rule 26(b)(1) states that"[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1)(emphasis added). The relevance inquiry demands focus on the parties' claims and defenses, not the subject matter of the lawsuit. Proportionality analysis includes consideration of factors including the importance of the issues at stake, the amount in controversy, the parties' relative access to information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Id.

Evaluating the subject subpoena duces tecum against these standards leads to the conclusion that the Smiths's requests to Whitney to produce the broad array of financial records sought in the subpoena are excessive in part, seek much that is not relevant to the claims and defenses in this case, and in part exceed the proportionality strictures by encompassing some materials that are beyond what is necessary and beneficial to resolution of this case.

In this case involving multiple claims and parties, determination of the relevance component of the discovery standard requires an understanding of what constitutes a claim and against whom it is asserted. To state a claim

> "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" A claim for relief is plausible on

its face "when the plaintiff pleads <u>factual content</u> that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." A claim for relief is implausible on its face when "the well-pleaded facts <u>do not permit the court to infer more than the mere possibility</u> of misconduct."

<u>Harold H. Huggins Realty, Inc. v. FNC, Inc.</u>, 634 F.3d 787, 796 (5th Cir. 2011) (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007))(emphasis added). A cognizable claim states allegations that "must be enough to raise a right to relief <u>above the speculative level</u>, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Maloney Gaming Mgmt., L.L.C. v. St. Tammany Parish</u>, 456 F. App'x 336, 340 (5th Cir. 2011) (quotations omitted) (citing <u>Iqbal</u>, 129 S. Ct. at 1959; <u>Elsensohn v. St. Tammany Parish Sheriff's Ofc.</u>, 530 F.3d 368, 371 (5th Cir. 2008); <u>In re Katrina Canal Breaches Litig.</u>, 495 F.3d 191, 205 n.10 (5th Cir. 2007))(emphasis added).

As to the proportionality factors, the issues at stake are not important, except the Stags and Smiths, since they involve only a quarrel over money between lawyers. The amount in controversy appears substantial. The parties appear to have relatively equal resources, but the Stags' access to relevant bank account records appears superior to the access of the Smiths. Whitney has made no complaint about the burden or expense of compliance with the subpoena. The records of the bank accounts of the law firms and law practice entities through which the disputed fee shares and settlement amounts flowed and in which they were used during the relevant time period are important to resolution of the issues in the case. However, the myriad other peripheral banking materials listed in Items 1(i) - (m) of Exhibit A to the

9

subpoena and Stag's personal accounts apart from those of his various business entities are both irrelevant to the claims and defenses and unimportant to resolution of the issues.

Applying the foregoing factors, I find that – with elimination of the unnecessary and excessively compulsive instructions and definitions[2] and some revisions to the overly broad language employed in parts of the subpoena attachment – some of the subpoena fits within the relevance and proportionality standard, limited to the enumerated accounts <u>of the law firm entities only</u>. However, the request for loan applications, collateral agreements, credit reports, financial statements and notes or other instruments reflecting the obligation to pay, even if they may have some tangential relevance to the subject matter of the lawsuit, exceed the proportionality and relevance to claims or defenses restrictions on the scope of discovery that apply to this case under current standards.

In addition, I cannot conclude that the Smiths' claims, including commingling, embezzlement and diversion of funds, set out in their counterclaim constitute a claim for relevance purposes against Stag individually warranting large-scale discovery of his personal bank accounts. The overall thrust of the Smiths' claims allege diversion of attorneys' fees and settlement proceeds earned by the law firm entities that the Smiths claim should have been their share. The Smiths' counterclaim vaguely lumps in Stag in his individual capacity among the "Stag parties" with no particular plausible factual content above the speculative level indicating diversion of funds claimed by the Smiths into Stag's personal accounts as opposed to the law firm accounts of the various Stag entities. The affidavit attached to the

---

[2]Common words have their own plain meaning, easily located in any dictionary. It is unnecessary for a lawyer to redefine words such as "describe," "concerning" or "and."

sur-reply filed by the Smiths confirms that the Smiths' claims concern "commingling of third-party and medicare funds <u>by Stag Liuzza, LLC,</u>"commingling, conversion and "costs . . . pocketed," all by Stag Liuzza, LLC, including into the firm's operating account, without mention of Stag's personal accounts. Record Doc. No. 154-1 at ¶'s11, 14-18. The overall allegations indicate that any such funds that might ultimately have been deposited to Stag's personal accounts would first have flowed through the Stags' law firm accounts, the records of which should show any direct payments to Stag in his individual capacity. Thus, discovery of Stag's personal accounts is neither relevant nor proportional.

Accordingly, the court makes the following modifications to Exhibit A to the single remaining subpoena.

The words "definitions and" are stricken from the second sentence of the introductory paragraph and the centered heading under it.

All "Definitions and Instructions" contained in Paragraphs A, B and E – L of Exhibit A to the subpoena are stricken. Paragraphs C and D are specifically contemplated as acceptable instructions by Fed. R. Civ. P. 45(e)(1)(B), subject to the restrictions contained in Fed. R. Civ. P. 45(e)(1)(C) and (D), and are permitted to remain.

The introductory paragraph numbered 1 under the "Documents Requested" heading on current page 5 is modified to exclude reference to Michael G. Stag individually and his personal accounts and to read as follows: "1. Please produce all records of open or closed bank accounts at Whitney National Bank and/or Hancock Whitney Bank[3] of or for Michael

---

[3]The bank's address included in this paragraph is deleted because its offices are no longer located there.

G. Stag L.L.C., Smith Stag, L.L.C. and/or Stag Liuzza L.L.C., for the time period March 1, 2015 to the present, limited to:"

The motion is denied as to Items (a), (b), (d), (e), (f) and (g), which remain as written, subject to the limitations contained in the modified introductory paragraph above.

The motion is granted in that Item (h) is modified to read: Documents reflecting deposits and/or disbursements of funds (checks, debit memos, cash in tickets, wires in, wires out) into and/or from the accounts described above."

The motion is granted in that Item (c) is stricken as duplicative of revised Item (h).

The motion is granted in that records described in Items (i), (j), (k), (l) and (m) need not be produced and those items are STRICKEN from the subpoena.

**IT IS ORDERED** that the Smiths must revise their subpoena to Whitney in compliance with this order and re-serve a single subpoena, copied to the Stags's counsel and providing the subpoena recipient with at least 28 days from the date of service to respond. The Smiths state that they have no objection, Record Doc. No. 142 at p. 5, to the subpoenaed documents being designated as confidential under the existing protective order, Record Doc. No. 68, and they are hereby made subject to that protective order.

New Orleans, Louisiana, this \_\_\_\_4th\_\_\_\_ day of October, 2019.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE