UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MICHAEL G. STAG, ET AL.                    CIVIL ACTION

VERSUS                                      NO: 18-3425 c/w 20-991

STUART H. SMITH, LLC, ET AL.                SECTION: "A" (2)

## ORDER AND REASONS

The following motions are before the Court: **Motion for Summary Judgment (Rec. Doc. 241)** filed by plaintiffs/defendants-in-counterclaim Michael G. Stag, LLC, Stag Liuzza, LLC (formerly known as Smith Stag, LLC), and Michael G. Stag (referred to at times collectively as "the Stag Parties"); **Motion to Rescind Conditional Order of Dismissal (Rec. Doc. 234)** filed by defendants/plaintiffs-in-counterclaim Stuart H. Smith, LLC and Stuart H. Smith (referred to at times collectively as "the Smith Parties"). Both motions are opposed. The motions, submitted for consideration on March 18, 2020, are before the Court on the briefs without oral argument.[1] For the reasons that follow, the motion for summary judgment is DENIED and the motion to rescind is GRANTED.

I.    **Background**[2]

On December 17, 2019, the Court, having been informed that this matter had settled as to all parties and all claims, entered its standard 60 day order of dismissal.

---

[1] The Court notes that the parties have requested oral argument on their respective motions. The Court is persuaded that the arguments presented by counsel in the numerous memoranda that have been filed will suffice to convey each parties' position.

[2] The dispute that gave rise to this case is described in greater detail in prior rulings of the Court and of the magistrate judge. Michael G. Stag and Stuart H. Smith are former law partners of

(Rec. Doc. 222, Order of Dismissal). It is apparent from the record that counsel for the parties contacted the Court after executing a "Term Sheet" that ostensibly contains the terms of the parties' settlement.[3] (Rec. Doc. 223-4 at 12).

The Term Sheet is only two pages long. It references a mutual, general release that will ultimately be executed by the parties (*id.* ¶ 8) and "further documents consummating the agreement to settle" that will be generated within three weeks (*id.* ¶ 1). Notably, the Term Sheet includes signatories that are not parties to the litigation before this Court and it compromises state court litigation (and an arbitration) that are not part of the case before this Court.

---

Smith Stag, LLC. In 2015, Smith withdrew from the firm due to a serious illness. The terms of the withdrawal were governed both by the firm's Operating Agreement and by a negotiated Separation Agreement between Stag and Smith. (Rec. Doc. 1-1). After Smith returned to the practice of law, Stag initiated this action against Smith alleging that Smith embellished the severity of his illness in order to withdraw from the firm on more favorable financial terms.

[3] The Court was informed about the now-disputed settlement by a joint phone call received from counsel for both Stag and Smith. The Court's law clerk with whom they spoke asked whether entry of a 60 day order of dismissal would be appropriate. Counsel for both sides confirmed that a 60 day order of dismissal should be entered. But Smith now advises that he did not authorize this. According to Smith, he was not advised about and did not consent to "an administrative dismissal" of this case, and he contends that the case should have been stayed and not dismissed. (Rec. Doc. 243-13, Stuart H. Smith declaration ¶¶ 10(e),(f)). Smith points out that the Term Sheet expressly provides that all parties agree to entry of a 60 day order of dismissal in this case "upon signing of the settlement documents." (Rec. Doc. 243-3, Term Sheet ¶ 6). It does not state that the parties agree to an order of dismissal upon signing of the Term Sheet itself.

It is clear, however, that Smith ratified his counsel's actions by acquiescing in having the case dismissed based upon the signing of the Term Sheet. Smith, who remains an active attorney in this district, is enrolled as counsel of record for the Smith Parties, and the Court's CM/ECF electronic delivery receipt confirms that a copy of the 60 day order of dismissal was sent to Smith on December 17, 2019. The order of dismissal is clear on its face that it effects a dismissal, not a stay, and the first sentence of the order states that "all of the parties to this action have firmly agreed upon a compromise." (Rec. Doc. 222, Order of Dismissal). Yet Smith did not seek to have the dismissal order vacated until he filed his Motion to Rescind on February 12, 2020, and the basis of that motion was that there had been no meeting of the minds as to a settlement, not that his counsel had exceeded his authority in agreeing to a dismissal as opposed to a stay. (Rec. Doc. 234). Smith's declaration, which was filed on March 10, 2020 as part of his opposition to the Stag Parties' motion for summary judgment, is the first time that Smith has suggested that an order of dismissal had been entered without his consent.

Counsel for the Stag Parties was asked to and graciously agreed to draft the receipt and release document for the settlement. (Rec. Doc. 223-6 at 2). While the Term Sheet was only two pages long, the substance of the Settlement, Release, and Indemnity Agreement that the Stag Parties prepared was eight single-spaced pages in length, and like the Term Sheet included parties and litigation that are not before this Court.

On February 5, 2020, the Court denied the Stag Parties' first motion to enforce the settlement, in part because the Court was persuaded that the Stag Parties had prematurely moved for relief, not having allowed the Smith Parties sufficient time to consider and provide input to the draft Settlement, Release, and Indemnity Agreement that the Stag Parties had prepared. (Rec. Doc. 232, Order and Reasons). The Court expressly declined to usurp the Smith Parties' role of determining whether the Settlement, Release, and Indemnity Agreement, as drafted by the Stag Parties, conformed to or deviated from the provisions of the Term Sheet. (*Id.* at 3). In their opposition to the motion to enforce, the Smith Parties did not deny that they had settled with the Stag Parties although they did begin to question whether no meeting of the minds had occurred and that no valid compromise had been reached given the parties' inability to agree on a version of a release and indemnity agreement that conformed to the Term Sheet. (Rec. Doc. 225, Opposition at 2). The most salient obstacle that the Smith Parties complained about was the Stag Parties' refusal to provide documentation pertaining to the monies contained in the escrow account previously ordered by the Court.[4]

---

[4] In its Minute Entry of 7/24/18, the Court directed the Stag Parties to hold in escrow in a separate account all attorney's fees associated with the schedule of active cases listed on the

The parties presumably made additional attempts to finalize the settlement documents and to preserve what both sides had believed at one time to be a valid settlement. Unfortunately, on February 12, 2020, the Smith Parties filed the instant motion to rescind the order of dismissal contending that the Smith Parties and the Stag Parties did not make the same agreement and that there was no meeting of the minds regarding an actual, final settlement agreement. The Smith Parties deny that the Term Sheet by itself constitutes a binding settlement agreement. According to the Smith Parties, the Stag Parties are once again trying to strong arm their self-serving version of a settlement that they know the Smith Parties would never have agreed to. Therefore, the Smith Parties asseverate that the Court must reopen this case in order to either proceed with the litigation or address these issues.

On February 18, 2020, the Court granted the Stag Parties' motion to extend the deadline for any party to move to enforce the compromise. (Rec. Doc. 238, Extension on Order of Dismissal). Shortly thereafter, the Stag Parties filed the instant motion for summary judgment—which is actually their second motion to enforce the settlement—contending that the Term Sheet by itself constitutes a binding and enforceable settlement and that the Smith Parties should be ordered to comply with its terms. The Stag Parties point out that the fact that the parties have been unable thus far to agree to the language of a receipt and release document does not mean that they did not reach a binding and enforceable settlement when they executed the Term Sheet.[5] Further, the

---

Separation Agreement. (Rec. Doc. 26). On 9/7/18, the Court entered an order granting the parties' joint motion to allow for release of those funds upon written consent of all parties. (Rec. Doc. 69).

[5] The Stag Parties filed their motion for summary judgment to enforce the settlement on March 3, 2020. On March 23, 2020, the Stag Parties filed a new civil action in this district for the

Stag Parties point out that if Smith is allowed to reopen this case and restart the litigation as if no agreement had been made then he will benefit from additional time to meet pretrial deadlines and be rewarded for delaying discovery and disrupting the trial date, all causing more expense to Stag who was ready to meet all deadlines.

II.     **Discussion**

*Governing Law*

Although federal courts possess the inherent power to enforce agreements entered into in settlement of litigation, the construction and enforcement of settlement agreements is governed by the principles of state law applicable to contracts generally. *Crowell v. CIGNA Grp. Ins.*, 410 Fed. App'x 788, 792 (5th Cir. 2011) (unpublished) (citing *E. Energy, Inc. v. Unico Oil & Gas, Inc.,* 861 F.2d 1379, 1380 (5th Cir.1988)).

The parties agree that the state law principles that govern their dispute over the enforceability of the Term Sheet derive from Louisiana law.

A compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship. La. Civ. Code art. 3071. A compromise shall be made in writing or recited in open court, in which case the recitation shall be susceptible of being transcribed from the record of the proceedings. La. Civ. Code art. 3072. A compromise settles only those differences that the parties clearly intended to settle, including the necessary consequences of what they express. La. Civ. Code art. 3076. An enforceable compromise agreement has two essential elements: (1) mutual intention of preventing

---

purpose of obtaining declaratory relief as to the enforceability of the settlement represented by the Term Sheet. That civil action, 20-991, has been transferred to this section and is now consolidated with the captioned case.

or putting an end to the litigation, and (2) reciprocal concessions of the parties to adjust their differences. *Morris, Lee & Bayle, LLC v. Macquet*, 192 So. 3d 198, 209 (La. App. 4th Cir. 2016) (citing *Trahan v. Coca Cola Bottling Co. United, Inc.,* 894 So.2d 1096, 1104 (La. 2005)).

But as with any contract a compromise is valid only if the parties share a meeting of the minds as to their intent. *Amy v. Schlumberger Tech. Corp.*, 771 So. 2d 669, 672 (La. App. 3rd Cir. 2000) (citing *Am. Bank & Trust Co. v. Hannie,* 568 So. 2d 216 (La. App. 3rd Cir.1990)). A compromise is valid if there is a meeting of the minds of the parties as to exactly what they intended when the compromise was reached. *Feingerts v. State Farm Mut. Auto. Ins. Co.*, 117 So. 3d 1294, 1301 (La. App. 4th Cir. 2013) (citing *Elder v. Elder & Elder Enterprises, Ltd.*, 948 So.2d 348, 350–51 (La. App. 4th Cir. 2007)).

Compromises are favored in the law and the burden of proving the invalidity of such an agreement is on the party attacking it. *Sileo v. Berger*, 74 So. 3d 753, 759 (La. App. 4th Cir. 2011) (citing *Elder*, 948 So. 2d at 350). Not only does the party seeking to nullify a settlement agreement bear the burden of proof but the law strongly favors compromise agreements between parties. Courts will not invalidate such settlements absent a strong showing that they violate good morals or the public interest because of error, bad faith, or fraud. *In re Vioxx Prod. Liab. Litig.*, 412 F. App'x 653, 654 (5th Cir. 2010) (unpublished) (citing *City of Baton Rouge v. Douglas,* 984 So.2d 746, 749 (La. App. 1st Cir. 2008)).

### *Analysis*

Smith's primary contention is not that he should be allowed to repudiate an unfavorable compromise—relief that would be exceedingly difficult to obtain—but rather that no compromise was reached because the Term Sheet by itself does not constitute a binding and enforceable settlement agreement. Smith explains that he never considered the Term Sheet to constitute a final settlement but rather "an agreement to agree" and a working document that at best outlines the terms of a "proposed agreement." According to Smith, the Term Sheet merely outlined fifteen proposed terms to hopefully lead to the consummation of a global settlement to resolve all claims between the parties. The Smith Parties did not consider the Term Sheet to be a final document because it envisions future settlement documents and actions to take place following due diligence, and it was these other anticipated settlement documents that were to contain the binding force of the settlement.

The Stag Parties, however, emphasize that the parties to the Term Sheet are sophisticated attorneys and were fully capable of describing the Term Sheet as an agreement to agree if that's what it was intended to be. The Stag Parties point out that there is no reference in the Term Sheet to due diligence or to contingent obligations.

The Stag Parties' argument regarding the sophistication of the parties and their capabilities for preparing a clear and descriptive document cuts both ways. On its face the Term Sheet leaves open the possibility that it is exactly what Smith describes it to be—a preliminary working document that was never intended to constitute the parties' final and enforceable settlement agreement. At the very least, Smith is correct that the Stag Parties are not entitled to summary judgment on the issue.

For instance, the Term Sheet contains no preamble as to its purpose and nothing that describes it as a binding and final settlement agreement. It is not called "settlement agreement." In the various paragraphs of the Term Sheet the parties never refer to the document as a "settlement agreement" much less a binding one. The closest reference is in paragraph 1 where the Term Sheet is characterized as an "agreement to settle," but even then in that same sentence it states that the settlement is to be "consummated" by other documents, such as the draft Settlement, Release, and Indemnity Agreement, that the parties were to execute at a later date.

When the Court was called upon to review the draft Settlement, Release, and Indemnity Agreement in conjunction with the Stag Parties' first motion to enforce, it became clear to the Court that the real substance of the settlement agreement was always meant to be outlined in those "[f]urther documents consummating the agreement to settle." Thus, this case is not one where the release documents were just tying up loose ends and where the failure to agree on them did not affect an otherwise valid settlement. Instead, during the preparation of those further documents it became apparent that the parties had not shared a meeting of the minds as to their intent when they executed the Term Sheet.

Further, even though the parties had been aiming toward a global settlement that included claims and parties not joined in this litigation, this Court's sole concern is with the claims pending in this case and whether the Term Sheet ended the litigation between the parties before this Court. On that front, the Term Sheet expressly states that "[a]ll parties to the Eastern District litigation agree to the filing of a 60 day dismissal upon signing of *the settlement documents*," not upon the signing of the Term Sheet.

Moreover, the crux of the dispute in the Eastern District litigation was the propriety of Stag withholding from Smith his share of attorney's fees in the cases listed on the schedule of active cases that was part of the Separation Agreement. Stag believed that he was justified in doing this pending his attempt to reform the Separation Agreement in light of Smith's return to the active practice of law, and Smith of course claimed that he was entitled to immediate payment of those fees.

Yet the Term Sheet does not effect a release of those claims because it expressly refers to an anticipated mutual, general release—which is not the Term Sheet—that would be the document to effectuate a release of "all claims under the Operating Agreement and the Separation Agreement," (Rec. Doc. 243-3, Term Sheet ¶ 8A), and "all claims by both parties for any obligations or damages asserted in the Eastern District," (*id.* ¶ 8A(v)). Thus, at least as to the case before this Court, the Term Sheet itself, by its own terms, did not effect a compromise.

Further, the Term Sheet does not have a set time for the *execution* of the settlement documents even though they were to be *generated* within three weeks. (Rec. Doc. 225, Opposition at 3). The Term Sheet is ambiguous as to whether the three week window was to follow execution of the Term Sheet or payment of $950,000 by Stag, which was to occur 60 days after the Term Sheet was signed.[6] The fact that the parties were unable to fix a deadline for the settlement documents to be finalized and executed cuts against the suggestion that the "further documents consummating the agreement to settle" were merely perfunctory releases and it supports Smith's contention that the Term Sheet was just a preliminary agreement to agree.

---

[6] It is the Court's understanding that the $950,000 payment was not made.

That said, the Term Sheet is in writing and is signed by Stag and Smith both individually and on behalf of their related entities. And it is the Court's understanding that the Term Sheet was executed following a lengthy private mediation, a factor that Louisiana courts have found to militate in favor of enforceability. *See, e.g., Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 720 So. 2d 372 (La. App. 4th Cir. 1998); *Feingerts*, 117 So. 3d 1294. It is not clear to the Court, however, how many days or weeks elapsed between the conclusion of the mediation and the execution of the Term Sheet. The Term Sheet is not dated.

In sum, the Court is persuaded that the Term Sheet is ambiguous on its face as to whether it was supposed to be a final, binding settlement agreement. The Court is not persuaded that the parties reached a meeting of the minds as to their intent when they executed the Term Sheet. The Stag Parties are not entitled to summary judgment on the issue of its enforceability. Although the Court will rescind the 60 day order of dismissal, the Court strongly urges the parties to take another opportunity to resolve this matter by agreement while normal operations are suspended due to the COVID-19 pandemic. Once normal operations resume, if the parties have not reached a final, binding settlement, the Court will schedule a status conference so that the case can be fully restored to the active trial docket.[7]

Accordingly;

---

[7] Although the parties' merits arguments regarding the substance of the Term Sheet's provisions are now moot given the Court's conclusion that it was just a preliminary document, both sides made untenable arguments regarding the operation of Paragraph 11 of the Term Sheet. The Stag Parties' contention that Smith waived any claim to BP fees that the Krupnick Campbell firm had been escrowing—apparently without the knowledge of either side—was not credible. Likewise, the Stag Parties called it right when pointing out that Smith's interpretation of Paragraph 11 made no grammatical or legal sense. Simply, Paragraph 11 of the Term Sheet was poorly drafted.

**IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 241)** filed by the Stag Parties is **DENIED**.

**IT IS FURTHER ORDERED** that the **Motion to Rescind Conditional Order of Dismissal (Rec. Doc. 234)** filed by the Smith Parties is **GRANTED** as follows: The Order of Dismissal (Rec. Doc. 222) entered on December 17, 2019 is **VACATED**. The case shall remain closed for administrative reporting purposes and stayed for all activity except that related to settling the case. Civil Action 20-991 is also stayed at this time and shall likewise be closed at this time for administrative reporting purposes. The Court will schedule a status conference for the consolidated cases when normal operations resume in the Eastern District of Louisiana in the aftermath of the COVID-19 pandemic.

April 23, 2020

_____
UNITED STATES DISTRICT JUDGE